# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

SAMUEL RALPHEAL BROWN,

     Petitioner,

v.                                  CASE NO. 5:19-cv-109-Oc-02PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and
FLORIDA ATTORNEY GENERAL,

     Respondents.

_____/

## ORDER

Petitioner, a prisoner serving a state sentence, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254. Dkt. 1. Respondents filed a timely response, Dkt. 14, and the time for Petitioner to file a reply has elapsed. The Court finds no need for a hearing and denies the petition.

In September 2015, Petitioner was convicted by a jury of attempted second degree murder, attempted felony murder, and attempted burglary. The evidence showed that Petitioner and his brother burgled a house, and returned the next day with others to steal two gun safes they had spied there. Upon returning to the house, armed, the men participated in a botched home invasion where Petitioner was shot while exchanging gunfire with the victim. Trial evidence included the victim and three codefendants all testifying against Petitioner and inculpating him

unequivocally. Additionally, his DNA was found on a gun stolen in the first burglary and used in the second. Before heading out to the second robbery, Petitioner texted his paramour that he was "about to hit a lick" that morning.[1]

Petitioner was sentenced to life imprisonment as a prison releasee reoffender. Dkt. 15-1, Exh. A, Vol. II at pp. 178–289, 395–399.[2] On October 28, 2016, Petitioner's judgment and sentence for attempted felony murder and attempted burglary was affirmed, and his conviction and sentence for attempted second degree murder was set aside because it violated double jeopardy principles. Exh. D; *see also Brown v. State*, 204 So.3d 546 (Fla. 5th DCA 2016). Petitioner's amended sentence upon remand was life. Dkt. 15-16 at 90.

On January 18, 2018, Petitioner, through counsel, filed a Rule 3.850 motion to vacate or set aside convictions and sentences. Exh. F at pp. 1-71. On April 19, 2018, the trial court denied all relief. Exh. F at pp. 595-909. On January 22, 2019, the district court of appeal per curiam affirmed the denial. Exh. I; s*ee also Brown v. State*, 263 So.3d 46 (Fla. 5th DCA 2019).

On August 7, 2018, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in the Florida Fifth District

---

[1] Tr. 296–305, 707–708 (DNA); Tr. 1075 (text message). The trial transcript will be cited as "Tr." and is found in Exhibit A as noted at Dkt. 15-1.

[2] All record exhibits of the proceedings (Exhibits A through N) are found here at Dkt. 15, which is docketed electronically in number attachments. This order will cite to the lettered exhibits and, when appropriate, the specific electronic attachments, Dkt. 15-1 through Dkt. 15-16. .

Court of Appeal, pursuant to Fla. R. App. P. 9.141(d).  Exh. K; Dkt. 15-16 at 145.

On November 20, 2018, the petition was denied.  Exh. N.

The Respondents state that the instant petition is timely, and the Court

agrees.

Petitioner's case is governed by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, §104, 110 Stat. 1214, 1218-19.

Concerning the AEDPA the Eleventh Circuit Court of Appeals noted:

> With respect to claims adjudicated on the merits, § 2254(d)(1) restricts
> the issuance of habeas relief to those cases resulting in a decision that
> was contrary to, or involving an unreasonable application of, clearly
> established federal law, as determined by the United States Supreme
> Court. Section 2254(d)(2) provides for habeas relief where the state
> court determination "resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding."

> The AEDPA also mandates deference to state court factual
> determinations. Under § 2254(e)(1), a state court's determination of a
> factual issue is presumed correct. One seeking habeas relief must rebut
> this presumption by clear and convincing evidence. § 2254(e)(1).

*Valle v. Sec'y for the Dep't of Corrs.*, 459 F.3d 1206, 1211 (11th Cir. 2006).

The instant petition contains claims of ineffective assistance of counsel.

Ineffective assistance of counsel claims are governed by the two-part performance-

and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  *Clark v. Crosby*, 335 F.3d 1303, 1310 (11th Cir. 2003).

The Supreme Court teaches:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and 2254(d) are both "highly deferential," *id*., at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011). With that background, the Court turns to the grounds set forth in the petition.

GROUND ONE

In Ground One, Petitioner argues that his trial counsel was ineffective for failing to object and move for a mistrial when the trial judge asked a witness a question. This issue was properly exhausted via the Rule 3.850 motion for postconviction relief. Trial Judge Stancil inquired of the codefendant, Cornelius Lewis, whether Lewis was the "ringleader." Judge Stancil's question was posed during the following examination of Lewis by the prosecutor:

> STATE: And who was doing what in the Yukon? Who was seated where?
> LEWIS: I was in the driver seat. I can't remember who was in the passenger – well, I was in the driver [seat]. Darrell was in the passenger [seat]. And Caleb [Petitioner's brother] was in the back.

4

STATE: Eventually was somebody else driving the car?

LEWIS: Yes.

STATE: Who?

LEWIS: Caleb.

STATE: When did that switch happen?

LEWIS: At the store.

. . . .

STATE: Okay. How did it come to be that Sam [Petitioner] was in the car?

LEWIS: We drove down a road and we seen (sic) him walking and we picked him up.

STATE: And what happened when you all picked him up?

LEWIS: We went to the store, the BP – for gas.

STATE: Did you see if he had anything with him when he got in the car?

LEWIS: No sir. I didn't pay attention.

STATE: Where did he get in?

LEWIS: The back, behind the driver.

STATE: Do you guys talk between the time he gets in the car and you guys get to where you're going in the Belleview area?

LEWIS: Yes, sir.

STATE: Okay. What do you talk about? Who says what?

LEWIS: We basically – it was referred to something about, you know, the safe and what we were going to do.

STATE: Who was talking?

LEWIS: I was talking.

COURT: Were you the ringleader, so to speak?

LEWIS: Am I – was I the ringleader?

COURT: Yeah.

LEWIS: No, sir.

COURT: Who did you consider your leader?

DEFENSE COUNSEL (COUNSEL): Objection, argumentative.

COURT: I'm not going to – going to sustain your objection to my question.

STATE: Who was the ringleader, Mr. Lewis?

LEWIS: Sam.

COUNSEL: Objection.

COURT: Overruled.

Tr. 877–879.

The Petitioner complains Judge Stancil departed from his role as a neutral arbiter and took the side of the State when the court inquired as to the identity of the ringleader.  He argues that although counsel objected to the court's inquiry as being 'argumentative,' counsel erred when counsel failed to pose a proper objection to the court inserting itself into the prosecutor's examination, failed to request a curative instruction, and failed to move for a mistrial.

The Petitioner argues he was prejudiced by the court's inquiry, and counsel's failure to pose a proper objection, because the court's inquiry could reasonably be interpreted to favor the State and the response the court elicited assisted the State of Florida in directly contradicting Petitioner's theory of the case.  Citing *Dolan v. State,* 187 So. 3d 262, 266 (Fla. 2d DCA 2016), the Petitioner urges the court essentially "introduced its own evidence against [Petitioner], thereby departing from its required position of neutrality."  The Petitioner asserts that when the court "revealed that Cornelius Lewis considered Sam Brown the 'ringleader,' the State capitalized on the error two more times before the jury" to assist the State in introducing hearsay testimony and to assist the State in closing argument.  The Petitioner argues there is a reasonable probability the outcome of the trial would have been different but for counsel's failure to pose a proper objection and move for a mistrial.

A trial judge is permitted, generally, to ask questions of witnesses and may even comment on the evidence.  *See United States v. Block*, 755 F.2d 770, 775 (11th Cir. 1985) (holding no error: trial judge asked 45 questions).  This single incident, comprised of two questions, is entirely innocuous and far from a federal constitutional violation.  This is especially so given the particular facts of Petitioner's trial.

Defense counsel ably sought to rebut the witness's statement that Petitioner was the ringleader and suggested instead it was Petitioner's brother Caleb.  This included the following examination:

> DEFENSE COUNSEL (COUNSEL): You knew what was going on once you got up to Ocala. By then, you knew what was going on through Caleb, is that correct?
> LEWIS: Yes.
> . . . .
> COUNSEL: Okay. Now, let's go back again and talk about something. You were asked by [the prosecutor] for some reason who was the ringleader of this, okay. And who did you say?
> LEWIS: Sam.
> COUNSEL: Well, why would Sam be the ringleader?
> LEWIS: I mean, Caleb is his brother, right?
> COUNSEL: Last I checked, yeah.
> LEWIS: Huh?
> COUNSEL: So why Sam? Is it because he's sitting here and you' re sitting there that he's now the ringleader?
> LEWIS: No.
> COUNSEL: Well, you know what a ringleader is, don't you? What' s a ringleader?
> LEWIS: Shot caller.
> . . . .

COUNSEL: Okay. So – but meanwhile nobody called any shots. You just drove, how many miles from your house up here to Ocala, approximately? Marion – Marion Oaks-

LEWIS: Probably ten. I don't know.

. . . .

COUNSEL: All right. Whatever the distance is. Okay. So, you drove that difference to meet with Caleb, correct?

LEWIS: Yes.

COUNSEL: Okay. And he was calling the shots, wasn't he?

LEWIS: He told me he – he was the one that told me about it, yeah.

COUNSEL: Yeah?

LEWIS: The safes.

COUNSEL: So he's calling the shots and you go there and he's the one that's asking for the – for the truck, right?

LEWIS: Yes.

. . . .

COUNSEL: And you don't even know where you' re – where you're going, do you?

LEWIS: No.

COUNSEL: And he takes over the wheel, right?

LEWIS: Yes.

COUNSEL: And he drives, right?

LEWIS: Yes.

COUNSEL: And Sam's just walking on the side of the road and you guys pick Sam up, right?

LEWIS: Yes.

COUNSEL: All right. So, who does it look like to you right now is the- is the shot caller?

LEWIS: I'm guessing you want me to say Caleb.

COUNSEL: No. No, I don't want you to say anything, I just want – what is the – based on what we just talked about, now, you seem like a reasonable fellow-

LEWIS: Uh-huh.

COUNSEL: --who do you think is the shot caller?

PROSECUTOR: I'm going to object as asked and answered.

COURT: Well, I think he's answered that he – you brought out what you needed to bring or, you know – could bring out.

. . . .

COUNSEL: What's this thing about a dirt bike?

LEWIS: That was – that's what I was initially told, there was a dirt bike.

8

COUNSEL: By who?
LEWIS: By Caleb.

Tr. 906-910.

COUNSEL: Okay. Now, based on your testimony, I – I get the impression that Sam gets involved in this as far as your – your knowledge is concerned is when you pick him up. In other words, he's walking on the side of the road and you – you pick- you pick him up or Caleb picks him up. I'm sorry.
LEWIS: I picks (sic) him up.
. . . .
COUNSEL: . . . And, you indicated that there was no – no plan, right?
LEWIS: No thought up plan.
. . . .
COUNSEL: Okay. So, if you're still going to get a dirt bike, why – if you know, why is there conversations about – supposed conversations about two safes? Why are they talking about safes?
LEWIS: Because, sir, if you seen the – the form [the prosecutor] showed me and you, you'll see when we was texting on Facebook it said two safes.
COUNSEL: Right. Your text to Caleb?
LEWIS: Facebook messages.
COUNSEL: Right. To Caleb?
LEWIS: Yes.
. . . .
COUNSEL: Now, where everybody was at the house that you described, how did you wind up in your position? In other words, did you just kind of wander over there on your own, or did somebody tell you to go over there?
. . . .
LEWIS: I was peeking through the window
. . . .
COUNSEL: You guys didn't have a plan, right?
LEWIS: No thought up plan.
COUNSEL: So you just kind of happened to wind up stopped there?
LEWIS: Actually, they – they went ahead and I was – like I said, I was lagging behind. I was behind. So, while they was knocking on the door, I was looking through the window. I looked through the window.
. . . .

9

COUNSEL: Okay. Nobody told you to do that, though?
LEWIS: No.
COUNSEL: You did it on your own, okay. Now, the gun that you got, you got that from Caleb, right?
LEWIS: Yes.
COUNSEL: Okay. Did he ask you to pick one, or did he just hand you one?
LEWIS: Just handed it to me.

Tr. 913–917.

Additionally, there was other sufficient evidence, aside from the "ringleader" testimony, to establish the Petitioner as a leader. Codefendant Lewis testified Petitioner discussed the two safes while traveling to the victim's home. Tr. 885. According to Caleb, Petitioner was going to "help" him by "put(ting) the gun in the victim's face" to facilitate the theft. *Id*. The victim testified Petitioner was the defendant who pointed a gun at him, and Petitioner and he exchanged gunfire during the failed burglary. Tr. 438–439.

The manner in which counsel handled the Court's two simple questions was in no way ineffective or prejudicial, and does not come close to stating grounds for relief. *Cf*. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 11 (2002).

GROUNDS TWO AND THREE

In Ground Two, Petitioner argues that his trial counsel was ineffective for failing to object to opinion testimony and denigration and ridicule[3] of the defense.

---

[3] The second burglary was a home invasion, botched with the four robbers running amok after encountering the victim, who shot Petitioner. Petitioner complains the prosecutor argued it was

In Ground Three, Petitioner argues that his trial counsel was ineffective for failing to call a rebuttal witness. Petitioner's Grounds Two and Three before this Court are generally the same as Petitioner's Grounds Two and Three in his Rule 3.850 motion for postconviction relief. The trial court denied the instant grounds finding:

> Ground three and a portion of ground two should be considered together. In his second ground for relief, the Defendant argues trial counsel was ineffective for failing to object to improper opinion testimony the State elicited from two officers regarding the meaning of the Defendant's text message he was going to "hit a lick." At trial, the officers testified this phrase "basically" or "typically" means a robbery, burglary or theft. Tr. 1017-1019; 1076. Though skeptical, Officer Spillman conceded the term "could" involve a drug run or drug transaction. Tr. 1017. In his third ground for relief, the Defendant argues counsel was ineffective for failing to present a rebuttal witness, Kiyah Cody, to rebut the officer's testimony regarding the meaning of "hit a lick" and to add credibility to Caleb Brown's testimony that "hit a lick" has multiple meanings, including a drug purchase. The Defendant surmises that had counsel presented the rebuttal witness, the outcome of the proceedings would have been different, because Defendant's "hit a lick" statement "was the only evidence Sam had any intention of committing the crimes with his cohorts." The Defendant's arguments are a little unusual in that the Defendant appears to urge counsel was ineffective for failing to present additional testimony regarding other possible crimes or bad acts contemplated or committed by the Defendant.
>
> Trial counsel did pose an "argumentative" objection to Officer Spillman's testimony regarding the meaning of "hit a lick." Tr. 1016.

---

"like amateur hour." In the first burglary Petitioner stole a replica tommy gun and made fruitless internet searches on how to load it. Petitioner complained the prosecutor said the "Defendant could not distinguish a replica gun," the Defendant was "no ... firearms expert; he certainly (was) no Christopher Rishel" and the defendants were "not the sharpest knives in the drawer." Both the State and the defense recognized the ineptitude of these young defendants and both referred to it in their closing argument. In closing, defense counsel referred to the defendants as "this group of merry men" and "our comedy gang" and argued that the way the defendants committed the attempted burglary did not make sense "even for the dumbest people." Tr. 1162, 1186, 1187.

Although counsel's argumentative objection was not a proper objection, counsel expanded on his objection and argued the term "could mean different things to different people." Id.

The prosecutor continued to ask clarifying questions and the court ultimately overruled the objection. Tr. 1016-1017. Although the Defendant may have demonstrated error, the Defendant fails to meet the prejudice prong of *Strickland*. The Defendant's "hit a lick" text message was not the only evidence the Defendant had an intention to participate in the crimes. Both the Defendant, and his brother Caleb, burglarized the victim's home the day before. The Defendant's "hit a lick" text was sent shortly before the brothers traveled to the victim's home a second time to re-burglarize the home and take the two safes they saw the day before. They armed themselves with the weapons they stole the day before. The brothers were better prepared the second day and took numerous acts towards the second burglary attempt before the victim discovered their presence. At least two witnesses testified the "hit a lick" phrase "could" refer to a drug deal. The Defendant urges that Ms. Cody would have testified the phrase "can mean any number of things including buying or selling drugs." The proposed third witness's testimony that the term "could" mean "any number of things" including drug related activity would not have changed the outcome of proceedings. Given the timing of the "hit a lick" message, and all the other surrounding facts and circumstances, outcome of the trial, counsel's failure to interpose a proper objection and to call the rebuttal witness would not have made any difference to the outcome of the trial. *Also see the court's findings above on ground one, commencing with the first full paragraph on page 12, regarding the Defendant's failure to meet the prejudice prong of Strickland.*

In his second ground for relief, the Defendant also included an argument counsel was ineffective for failing to object to the improper denigration and ridicule of the Defendant and the defense. Failure to pose an objection to a prosecutor's closing remarks can be a cognizable claim for a post-conviction relief motion. *See* for example, *Perry v. State*, 787 So. 2d 67 (Fla. 2d DCA 2001). Although the State argues the comments were fair argument, some did exceed fair argument. The Defendant's second ground for relief, however, should be denied because the Defendant fails to meet the prejudice prong of *Strickland*. The result of the trial would not have been different but for the

prosecutor's comments. There was overwhelming evidence of the Defendant's guilt. *See the court's findings above on ground one, commencing on page, regarding the Defendant's failure to meet the prejudice prong of Strickland.* The prosecutorial comments, when considered in the context of all of the evidence and argument, did not deprive the defendant of a fair trial. The Defendant's second and third grounds for relief should be denied.

Exh. F at pp. 608-610 (footnotes omitted and emphasis in original).

Notwithstanding the accuracy of the opinion testimony, as noted by the trial court, Petitioner's "hit a lick" text message, sent to his paramour telling her what he was about to do, was only the slightest part of the evidence that Petitioner had an intention to participate in the crimes. On this record, there was no reasonable probability that counsel's failure to call a rebuttal witness regarding possible alternative illicit meanings for "hit a lick" had any impact on the jury's verdicts.

The state court's conclusion that Petitioner suffered no prejudice, and thus no ineffective assistance of counsel, was not an unreasonable application of *Strickland* or other clearly established federal law. *See Strickland*, 466 U.S. at 687 ("First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. ... Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."). Accordingly, the instant argument is insufficient to establish

either ground for habeas relief from this Court.  *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. at 11.

Regarding the prosecutor's mild mocking of the botched, amateurish burglary, there was no reasonable probability that counsel's failure to object to the comments had any impact on the jury's verdicts.  There was a bemusing aspect to the four invaders running amok, with the victim and Petitioner exchanging fire and Petitioner getting shot with the victim disabling their getaway car by blasting out the windshield and the tires.  Strategically, a defense theme of bumbling, unskilled amateurs plays better than the alternative.  Given the overwhelming evidence at trial, the state court's conclusion that Petitioner suffered no prejudice, and thus no ineffective assistance of counsel, was not an unreasonable application of *Strickland* or other clearly established federal law.  *Strickland*, 466 U.S. at 687.  Accordingly, the instant argument is insufficient to establish either ground for habeas relief from this Court.

GROUND FOUR

In Ground Four, Petitioner argues that his trial counsel was ineffective for failing to object to the codefendants appearing in jail garb and shackles. Petitioner's Ground Four before this Court is generally the same as Petitioner's Ground Four in his Rule 3.850 motion for postconviction relief.  The trial court denied the instant ground finding:

In his fourth ground for relief, the Defendant argues trial counsel was ineffective for failing to object and move for a mistrial when the codefendants appeared before the jury in shackles and jail garb, making it appear as though the Defendant was guilty by association. [footnote 21 – see below] The State of Florida argues the Defendant failed to demonstrate prejudice. The court agrees. The jail garb was hardly a surprise for the jury. All three of the witnesses who appeared in jail garb testified they had pending charges as a result of this case. Two of the codefendants testified they already had made a plea agreement with the State of Florida and had agreed to lengthy prison sentences. Tr. 772, 858 and 958. Additionally, the court must consider the alleged error in light of all of the evidence offered at trial. There was overwhelming evidence against the Defendant. *See the court's findings above on ground one, commencing on page 12, regarding the Defendant's failure to meet the prejudice prong of Strickland*. The Defendant failed to establish there is a reasonable probability that, but for the alleged error, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Defendant's fourth ground for relief should be denied.

[footnote 21] At trial, the defense suggested the codefendants were culpable and he was not. There may have been strategic reasons for counsel not posing an objection to the codefendants' jail garb, but the court need not reach that issue because the Defendant fails to demonstrate prejudice.

Exh. F at pp. 610-611 (footnote and emphasis in original).

As noted by the trial court, the jail garb and shackles were hardly a surprise for the jury. All three of the witnesses who appeared in jail garb testified they had pending charges as a result of this case. Two of the codefendants testified they already had made a plea agreement with the State of Florida and had agreed to lengthy prison sentences. Moreover, the State's evidence of Petitioner's guilt was overwhelming. Therefore, the state court's conclusion that Petitioner suffered no prejudice, and thus no ineffective assistance of counsel, was not an unreasonable

application of *Strickland* or other clearly established federal law. *See Strickland*, 466 U.S. at 687. Accordingly, the instant argument is insufficient to establish either ground for habeas relief from this Court. *See* 28 U.S.C. § 2254(d); *Early v. Packer*.

Further, there are strategic reasons for a defense attorney to want those testifying against his client to be in jail garb. It contrasts with the defendant, who sits at defense table in street clothes. It makes the adverse witnesses look more sinister, like the ones who really did it (and by definition the defense must show that they did it and they are lying to save themselves). It reminds the jury of the severity of what may befall the nicely-dressed defendant by their verdict. Finally, juries are very sophisticated, and would not believe for a moment that the sentenced and/or admittedly guilty armed home invaders would be at liberty, on "the street."

GROUND FIVE

In Ground Five, Petitioner argues that his trial counsel was ineffective for failing to preserve defense objections to the genuineness of the State's bases for striking two black prospective jurors. Petitioner's Ground Five before this Court is generally the same as Petitioner's Ground Five in his Rule 3.850 motion for postconviction relief. The trial court denied the instant ground finding:

> In his fifth ground for relief, the Defendant alleges trial counsel was ineffective for failing to properly preserve an objection to the

genuineness of the State's race neutral explanations for peremptory removal of the only two black prospective jurors on the jury panel. The Fifth District Court of Appeal did indeed find that counsel failed to preserve the issue of whether the trial court erred in failing to make a separate finding as to the genuineness of the race-neutral reasons offered by the State of Florida. *Brown* at 547. Clearly counsel failed to properly preserve this issue. The State of Florida argues there is nothing in the record to support the Defendant's assertion that the race-neutral reasons offered by the prosecutor were pretextual. The State also argues the Defendant fails to demonstrate "actual bias" by the jurors who sat on the jury and fails to demonstrate prejudice. The court agrees. Tr. 36, 45-46, 74-76, 79, 134-135, 151-154, 161-162 and 164. *See Caratelli v. State*, 961 So. 2d 312 (Fla. 2007). The Defendant's fifth ground for relief should be denied.

Exh. F at p. 611 (footnote omitted).

The trial court's attachments show that there was nothing in the record to support a finding that the State's reasons were not genuine. Further, the trial court's attachments show that there was nothing in the record to support a finding of actual bias by a juror who sat on Petitioner's jury. Therefore, the state court's conclusion that Petitioner suffered no prejudice, and thus no ineffective assistance of counsel, was not an unreasonable application of *Strickland* or other clearly established federal law. *See Strickland*, 466 U.S. at 667; s*ee also Hightower v. Terry*, 459 F.3d 1067, 1072 n.9 (11th Cir. 2006) (recognizing that a trial judge can implicitly find a prosecutor's proffered reasons credible).

The State used peremptory challenges to challenge the two prospective African-American jurors, Ms. Sancho and Mr. Wright. During jury selection, Ms.

Sancho was asked about how she felt about accomplices becoming witnesses, to which she responded:

> PROSPECTIVE JUROR (SANCHO): Well, I always say if you, if you can't do time, don't do the crime. I don't really have a problem with it in a sense and in a way I do . . . I mean, if you done it, you know, handle your time – you know, don't drag anybody else in with you, you know – do your thing. You did it, so deal with it.

Tr. 75–76. She then indicated, "I don't – I don't – I don't have a problem with it." Tr. 75.

Later, when exercising a peremptory challenge to strike Ms. Sancho, the State was asked to provide a race-neutral reason for the strike. Tr. 152. The State noted that Ms. Sancho, "when asked about accomplice testimony, . . . stated that she believed if people get caught committing a crime, they need to take their plea or do whatever and not get involved with other people, not get involved." Tr. 152. The trial court found this was a race-neutral reason to strike Ms. Sancho and denied the Petitioner's *Melbourne* challenge. Tr. 152.

During jury selection, as a follow-up to the panel being asked if they knew any of the participants in the trial, the State and Mr. Wright had the following exchange:

> MR. McCOURT [State prosecutor]: Mr. Wright, did you kind of put your hand up a minute ago?
> PROSPECTIVE JUROR (WRIGHT): I know Jack Maro is a lawyer.
> MR. McCOURT: Okay. How do you know him as a lawyer?
> WRIGHT: He represented my mother a few years back.

MR. McCOURT: All right. Do you feel like he did a good job for your
mom?
WRIGHT: Yeah.
MR. McCOURT: Okay. All right. Would anything about that affect
your deliberations in this case?
WRIGHT: No.

Tr. 36. Later, when exercising a peremptory challenge to strike Mr. Wright, the

State provided a race-neutral reason for doing so, noting he was the individual

whose mother was represented by Mr. Maro (Petitioner's present trial lawyer) and

who felt that Mr. Maro did a good job. Tr. 153. The court found this was a valid

race-neutral reason to strike Mr. Wright and denied the Petitioner's *Melbourne*

challenge.

Petitioner alleges that the State's reasons given for striking the prospective

jurors was not genuine. In support of this allegation, Petitioner argues that

similarly situated Caucasian jurors were not stricken. Petitioner argues that Ms.

Gawn, who was not stricken by the State, made comments similar to Ms. Sancho

when Ms. Gawn stated she was "not really sure" how she felt about accomplices

testifying. Tr. 151. Being "not really sure" how she felt about accomplices

testifying is different from believing that if you "done it" you should not "drag

anybody else in with you" and should simply "do your thing" and "deal with it."

Petitioner argues that Ms. Miller, who was not stricken by the State, made a

comment similar to Mr. Wright when Ms. Miller stated she lived down the street

from Detective Spillman, who coached her son's football team and who she

considered a friend. Tr. 45–46. Ms. Miller was not selected as an alternate juror based upon the agreement of the State and the defense. Tr. 161–162. There is a material difference between a juror whose mother was represented by defense counsel, who was in the same position relative to the Defendant that he was formerly in relative to the juror's mother, and a juror who was friends with a detective who would be called by the State.

Petitioner points to no other portion of the record to support his allegation that the State's race-neutral reasons given to strike the prospective jurors Sancho and Wright were pretextual. He merely speculates that they were not genuine and speculates that the trial court, if prompted to determine whether they were genuine, "would have found that the reasons were not genuine."

Race-neutral reasons were given and were accepted by the trial court. Following jury selection, the court asked the State, and Petitioner personally, if they were satisfied with the jurors selected. They stated they were. Tr. 163 ("The Court: Mr. Brown are you satisfied with this jury? Petitioner: Yes, Sir."). Petitioner's lawyer made appropriate objections to the strikes of these two African-American potential jurors.

Petitioner argues that the remaining jurors were biased, but his record citations do not support this. The defense attorney did not exhaust his peremptory strikes, Tr. 158, and Petitioner does not ascribe fault in his failure to do so.

Accordingly, the instant argument is insufficient to establish either ground for habeas relief from this Court. *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. at 11.

GROUND SIX

In Ground Six, Petitioner argues that he was denied his right to effective assistance of trial counsel based on "the cumulative effect" of his trial counsel's deficient performance. Petitioner's Ground Six before this Court is generally the same as Petitioner's Ground Six in his Rule 3.850 motion for postconviction relief. The trial court denied the instant ground finding:

> In his sixth ground for relief, the Defendant argues the Defendant's conviction and sentence was fraught with errors, which, when considered cumulatively, deprived the Defendant of due process and a fair trial. The State of Florida agrees the conviction for attempted second degree murder with a firearm should be vacated, but argues the Defendant is entitled to no other relief. The court agrees. The Defendant's judgment and sentence should be corrected to comply with the Fifth District Court of Appeal mandate…. The court considered each of the grounds raised by the Defendant, individually and cumulatively, and finds the Defendant has not demonstrated prejudice and has not demonstrated he was denied due process or a fair trial.

Exh. F at pp. 611–612.

The trial court's total record attachments show that the State's evidence of Petitioner's guilt was overwhelming. During trial, all three of Petitioner's accomplices, including his brother and his cousin, testified against Petitioner. DNA evidence tied him to the crimes. Moreover, the victim identified Petitioner

as the individual who had shot at him and as the individual he had shot. On this record, there was no reasonable probability that counsel's alleged errors, whether considered individually or cumulatively, had any impact on the jury's verdicts.

The state court's conclusion that Petitioner suffered no prejudice, and thus no ineffective assistance of counsel, was not an unreasonable application of *Strickland* or other clearly established federal law. *See Strickland*, 466 U.S. 668, 687.

GROUND SEVEN

In Ground Seven, Petitioner argues that his appellate counsel was ineffective for failing to argue the information was fundamentally defective because it charged a non-existing crime. Petitioner's Ground Seven before this Court is generally the same as Petitioner's only ground raised in his petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. Exh. K.

The record shows that the information did charge an existing crime, and Petitioner's claim was without merit.

Florida law provides:

[W]here the information is merely imperfect or imprecise, the failure to timely file a motion to dismiss under Rule 3.190(c) waives the defect and it cannot be raised for the first time on appeal. The test to determine if an information is fatally defective is whether there is a total omission of an essential element of the crime, or whether the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to the substantial danger of a new prosecution for the same offense.

*Ingraham v. State*, 32 So. 3d 761, 766 (Fla. 2d DCA 2010) (quoting *Jones v. State*, 415 So. 2d 852, 853 (Fla. 5th DCA 1982)). Petitioner did not claim that a motion to dismiss had been filed. So Petitioner's appellate counsel could not be considered ineffective for failing to raise a meritless issue that had been waived and was procedurally barred. *Downs v. Moore*, 801 So. 2d 906, 909-10 (Fla. 2001). Therefore, the state court's rejection of the instant claim was not contrary to, nor an unreasonable application of, *Strickland* or other clearly established federal law. Accordingly, the instant argument is insufficient to establish either ground for habeas relief from this Court. *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. at 11.

The Court has no need to convene an evidentiary hearing to resolve the matters presented. *See Cullen v. Pinholster,* 563 U.S. 170, 186 (2011) ("Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'") (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2000)).

The evidence here was overwhelming. Reasonable jurists could not differ on these findings. Therefore, the Court does not grant a certificate of appealability,

23

and therefore *in forma pauperis* status is also denied.  The Petition (Dkt. 1) is

dismissed.  The Clerk is directed to enter judgment accordingly and close the case.

**DONE AND ORDERED** at Ocala, Florida, on March 27, 2020.

*s/William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record and Petitioner, *pro se*